Slip Op. 20-9

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **THE NATIONAL ASSOCIATION OF MANUFACTURERS,** | |
| Plaintiff, | |
| **THE BEER INSTITUTE,** | |
| Intervenor-Plaintiff | |
| v. | **Before: Jane A. Restani, Judge** |
| **UNITED STATES DEPARTMENT OF THE TREASURY,** | |
| **UNITED STATES CUSTOMS AND BORDER PROTECTION,** | **Court No. 19-00053** |
| **STEVEN T. MNUCHIN**, in his official capacity as Secretary of the Treasury, | |
| and | |
| **JOHN SANDERS**, in his official capacity as Acting Commissioner of United States Customs and Border Protection, | |
| Defendants. | |

## OPINION AND ORDER

[The court holds unlawful the challenged aspects of the agencies' Final Rule]

Dated: January 24, 2020

Peter D. Keisler, Virginia A. Seitz, Tobias S. Loss-Eaton, and Barbara G. Broussard, Sidley Austin, LLP, of Washington, D.C., Catherine E. Stetson and Susan M. Cook, Hogan Lovells US LLP, of Washington, D.C., Peter C. Tolsdorf and Leland P. Frost, Manufacturers' Center for Legal Action, of Washington, D.C., for Plaintiff The National Association of Manufacturers.

James E. Tysse, Lars-Erik A. Hjelm, Raymond P. Tolentino, and Devin S. Sikes, Akin, Gump, Strauss, Hauer & Feld LLP, of Washington, D.C., for Intervenor-Plaintiff The Beer Institute.

Justin R. Miller, Attorney-in-Charge, International Trade Field Office, National Courts Section, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., and Alexander J. Vanderweide, Trial Attorney, Commercial Litigation Branch, Civil Division,

U.S. Department of Justice, of Washington, D.C., for Defendants United States Department of the Treasury, United States Customs and Border Protection, Steven T. Mnuchin, and John Sanders.  With them on the brief were Joseph H. Hunt, Assistant Attorney General, Civil Division, U.S. Department of Justice, of Washington, D.C., David M. Morrell, Deputy Assistant Attorney General, Civil Division, U.S. Department of Justice, of Washington, D.C., Jeanne E. Davidson, Director, National Courts Section, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., Claudia Burke, Assistant Director, National Courts Section, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C.  Of counsel on the brief were Daniel J. Paisley, U.S. Department of the Treasury, of Washington, D.C., and Alexandra Khrebtukova, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York, N.Y.

John M. Peterson, Richard F. O'Neill, and Patrick B. Klein, Neville Peterson, LLP, of New York, N.Y., for Amicus Curiae Customs Advisory Services, Inc.

Restani, Judge: The question before the court is how far should it go in interpreting statutory provisions so that they are not inconsistent with regulations that appear to address valid administrative and economic concerns of the agencies responsible for the implementation and operation of the statute. The answer is not very far from the actual words of the statute, particularly where Congress acts with presumed knowledge of the problem the agencies attempt to address in their regulations. In other words, Congress has acted. If the agencies wish a different result, they must seek it from Congress, not a court.

## I.     BACKGROUND

This case involves the interaction of federal excise taxes and duty drawback under the Tariff Act of 1930. Federal excise taxes are imposed on certain domestically consumed goods, regardless of origin, such as wine, beer, spirits, tobacco, and petroleum products.[1] Before the changes at issue, the regulations defined drawback as "the refund or remission, in whole or in

---

[1] Federal excise taxes, however, generally are not paid on exported goods if exported from a bonded facility or are refunded if paid and then exported. See, e.g. 26 U.S.C. § 5001(a)(1) (imposing a tax on all "distilled spirits produced in or imported into the United States"); 26 U.S.C. § 5214(a)(4) (noting that spirits withdrawn from a bonded premise and exported shall be withdrawn "without payment of tax"); 26 U.S.C. § 5062(b) (authorizing a drawback of excise tax paid or determined on exported distilled spirits or wine).

part, of a customs duty, fee or internal revenue tax which was imposed on imported merchandise

under Federal law because of its importation, and the refund of internal revenue taxes paid on

domestic alcohol as prescribed in 19 U.S.C. § 1313(d)." 19 C.F.R. § 191.2(i) (2015). Although

drawback can occur in multiple ways, the iteration most relevant to this case is "substitution

drawback." See 19 U.S.C. § 1313(j)(2) (2018)[2] (substitution for unused merchandise).[3] Simply

put, a party[4] is entitled to substitution drawback on the taxes, fees, and duties (collectively

"charges") paid on imports when other merchandise is exported[5] under the same Harmonized

Tariff Schedule of the United States ("HTSUS") subheading in a one-to-one fashion.[6] See 19

U.S.C. § 1313(j)(2); 19 C.F.R. § 191.22(a) (2019).[7] This may occur whether or not certain taxes

were paid on the corresponding exported merchandise. See 19 U.S.C. §§ 1313(j)(2), (l)(2). The

resulting non-collection of these taxes is what the agencies attempted to address.

　　　　For several years, companies that both export and import wine have been claiming

drawback on charges paid on the imported wine on the basis of their substituted exports, due in

---

[2] All further citations to the U.S. Code are to the 2018 edition unless otherwise indicated.

[3] Substitution drawback can also occur under 19 U.S.C. §§ 1313(b) (manufacturing substitution drawback) and 1313(p) (finished petroleum derivatives), but it is drawback under 19 U.S.C. § 1313(j)(2) that is of primary interest to this case.

[4] Although a party is often both exporter and importer, a party can transfer its right to drawback. See, e.g., 19 U.S.C. §§ 1313(b)(2)(A–C); 1313(j)(2).

[5] In the case of a drawback claim made under 19 U.S.C. § 1313(j)(2), rather than exporting the substituted good, it can be destroyed under the supervision of Customs and Border Protection ("Customs"). See 19 U.S.C. § 1313(j)(2).

[6] As described below, the substitution standard has changed over the years and wine has been afforded special treatment.

[7] All further citations to the Code of Federal Regulations are to the 2019 edition unless otherwise indicated.

part to a relaxed substitution standard.[8] For example, if a company imported 100 bottles of red

wine and then exported 100 bottles of red wine, that company could claim drawback for nearly

all charges assessed on the imported merchandise. The wine substitution exception has resulted

in a near total refund of the excise taxes paid on the imported wine. This has occurred even

though the substituted exported wine was either not subjected to any excise tax or had received a

complete refund of any previously paid excise taxes. Customs and Border Protection

("Customs") claims that this treatment of wine was a mistake that began occurring at the Port of

San Francisco in 2004. See Modernized Drawback, 83 Fed. Reg. 37,886, 37,896 (Aug. 2, 2018)

("Proposed Regulation"). Although Customs identified the issue and expressed concern on

multiple occasions to Congress, as detailed infra, no statute was passed to curtail the practice.

After repeated Congressional inaction, Customs and the Department of the Treasury

("Treasury") (collectively "the agencies") passed regulations to stop the wine industry from

continuing to benefit from what the agencies refer to as "double drawback"[9] and to ensure that

other industries would not attempt to benefit from the same scheme following the liberalization

of the substitution drawback requirements by the Trade Facilitation & Enforcement Act of 2015

---

[8] Since 2008, drawback has been allowed for wine in situations where the imported wine and the exported wine are the same color and the price variation between the imported wine and the exported wine does not exceed 50 percent. See Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-234 §15421, 122 Stat. 923, 1547 (2008) codified as amended (19 U.S.C. § 1313 (j)(2) (2008)). In contrast, before the passage of the Trade Facilitation & Enforcement Act of 2015 ("TFTEA"), in the case of substitution for unused merchandise drawback, goods had to be "commercially interchangeable." See 19 U.S.C. § 1313(j)(2) (2008). For manufacturing substitution drawback, goods had to be of the "same kind and quality." See 19 U.S.C. § 1313(b) (2008).

[9] The court will instead refer to what is occurring as "zeroed excise tax," although it recognizes that this is slightly inaccurate given that one percent of the excise tax is ultimately paid on the imported good.

("TFTEA") . Modernized Drawback, 83 Fed. Reg. 64,942, 64,960–61 (Dec. 18, 2018) ("Final

Rule").

     The Final Rule makes two fundamental changes to the drawback regime. First, the

agencies amended the regulations to "clarify" that "drawback" and "drawback claim" includes a

"refund or remission of other excise taxes pursuant to other provisions of law." 19 C.F.R.

§ 190.2. With this definition, the agencies characterize the export of merchandise even without

excise tax "paid or determined" as a claim for drawback. Second, the agencies amended various

provisions to limit drawback to the amount of taxes paid and not previously refunded. See 19

C.F.R. §§ 190.171(c)(3), 190.22(a)(1)(ii)(C), 190.32(b)(3), 191.171(d), 191.22(a), and

191.32(b)(4). The Final Rule prevents a domestically produced exported good, that would have

been subject to the excise tax if made available for domestic use, from satisfying a claim for

substitution drawback under the language of 19 U.S.C. § 1313(j)(2).

     Plaintiff, the National Association of Manufacturers ("NAM"), challenges these aspects

of the Final Rule as violative of the governing statute, arbitrary and capricious, and

impermissibly retroactive. Pl. Nat'l Ass'n of Mfrs. Br. in Supp. of its Mot. for J. on the Agency

R., at 14–54, ECF. No. 20-1 (June 24, 2019) ("NAM Br."). NAM and Amicus Curiae, Customs

Advisory Services Inc. ("CASI"), state that the language of 19 U.S.C. § 1313(j)(2) forecloses the

agencies' interpretation of 19 U.S.C. § 1313(v)[10] as section 1313(j)(2) states that if certain

conditions are met then drawback shall be refunded "notwithstanding any other provision of

law." NAM Br. at 20–23; Br. of Amicus Curiae, Customs Advisory Servs. Inc., at 5–7, 23–24,

---

[10] "Merchandise that is exported or destroyed to satisfy any claim for drawback shall not be the
basis of any other claim for drawback; except that appropriate credit and deductions for claims
covering components or ingredients of such merchandise shall be made in computing drawback
payments." 19 U.S.C. § 1313(v).

ECF No. 21-2 (June 24, 2019) ("CASI Br."). CASI also notes that the agencies' understanding of

19 U.S.C. § 1313(v) conflicts with section 1313(l)(2), which provides for the calculation of

substitution drawback. <u>See</u> CASI Br. at 6–9. Further, NAM argues that the agencies overread 19

U.S.C. § 1313(v) to prohibit substitution drawback of excise taxes paid on imported goods when

the substituted exported goods were exempt from excise tax. NAM Br. at 24–39. At base, NAM

and CASI argue that an untaxed export is not a claim for drawback, even though, as NAM notes,

in some situations Title 26, the Internal Revenue Code, refers to drawback in regard to taxes that

have already been paid or determined prior to exportation. NAM Br. at 25–32; CASI Br. at 13–

17. CASI further notes that Congress is familiar with the issue identified by the agencies and has

considered statutory amendments that would have restricted drawback in some situations in the

same way as the Final Rule, but that these amendments were not passed. CASI Br. at 17–21.

NAM also argues that agencies' Final Rule "would prevent the use of untaxed exports as

the basis for drawback of <u>any taxes, duties, or fees at all</u>," which the agencies do not intend.

NAM Br. at 32; Defs. Mem. in Resp. to the Mots. for J. on the Agency R., at 14–15, ECF No. 30

(Aug. 28, 2019) ("Def. Br."). NAM claims that even if this court evaluates the Final Rule under

<u>Chevron</u> step two, the Final Rule is not reasonable and is arbitrary and capricious because it is

unsupported by record evidence.[11] NAM Br. at 39–52 (citing <u>Chevron, U.S.A., Inc. v. Nat'l Res.

Def. Council, Inc.</u>, 467 U.S. 837 (1984)). Finally, should the court find the Final Rule valid,

NAM, CASI, and Plaintiff-Intervenor, the Beer Institute, contend that it is impermissibly

---

[11] Specifically, NAM claims that defendants' export incentive and revenue-loss rationales are
unsupported. NAM Br. at 41–52.

retroactive. NAM Br. at 52–54; CASI Br. at 24–29; The Beer Inst. Mem. In Supp. of Rule 56.1

Mot. for J. on the Agency R., at 15–40, ECF No. 27-2 (June 25, 2019) ("Beer Br.").[12]

The defendants argue that the interpretation of 19 U.S.C. § 1313(v) is reasonable,

historically supported, and necessary to reconcile the purpose of federal excise tax with the

drawback regime. Def. Br. at 9–31. They aver that the understanding of "drawback" to include

"unpaid tax liability that is extinguished" finds support in several statutory provisions and

dictionary definitions. Id. at 13–15. Further, defendants' understanding as codified in the new

Final Rule "preserves the integrity of both [the excise tax and drawback] regimes by vindicating

the animating principle of each of them." Id. 15–18. They reject that the Final Rule conflicts with

19 U.S.C. §§ 1313(j)(2) and (l)(2), claiming that a contrary reading prevents 19 U.S.C.§ 1313(v)

from acting as a necessary safeguard against abuse. Id. at 19–23. The defendants state that

drawback is not limited to taxes paid, but extends to tax exemptions in order to prevent improper

"piggybacking" of exemption benefits onto drawback benefits. Id. at 23–31; see also H.R. Rep.

No. 103-361 at 130 (1993), reprinted in 1993 U.S.C.C.A.N. 2552, 2680 (stating that 19 U.S.C. §

1313 "codifies current Customs practice against 'piggybacking' other duty exemption benefits

(foreign-trade zones, bonded warehouses and duty-free temporary importation) onto the

drawback benefits."). Finally, defendants argue that the Final Rule was reasonably supported

such that it is not arbitrary and capricious and that it does not apply retroactively. Def. Br. at 31–

44.

NAM replies that the agencies are trying to revert to Customs' pre-2004 regime, when

Congress clarified the law to allow for drawback of excise taxes among other consequences.

---

[12] Plaintiff-Intervenor, The Beer Institute, submitted a brief that is concerned solely with the retroactive application of the Regulation. Because the court invalidates the Regulation sections at issue, these arguments are moot and are not discussed in detail.

NAM Reply in Supp. of its Mot. for J. on the Agency R., at 4–6, ECF No. 31 (Sep. 23, 2019)

("NAM Reply"). NAM further defends its assertion that an untaxed exportation is not a claim for

drawback, which is "a claim to recover charges on <u>imports</u>" and "does not include any tax

exemption, remittance or refund for charges on exports." <u>Id.</u> at 6–13. In particular, NAM notes

that if defendants' claim that the new definition of drawback was long-understood to include

refunds and remissions, then the agencies would not have needed to amend the definitions of

"drawback" and "drawback claim" between the notice of proposed rulemaking and the Final

Rule to include the phrase "[m]ore broadly drawback also includes the refund and remission of

other excise taxes pursuant to other provisions of law." <u>See</u> <u>id.</u> at 9; <u>compare</u> Proposed

Regulation, 83 Fed. Reg. at 37,922 <u>with</u> Final Rule, 83 Fed. Reg. at 64,998.

## II.    JURISDICTION AND STANDARD OF REVIEW

Petitioners bring a challenge under 28 U.S.C. § 1581(i), which the court reviews under

the Administrative Procedure Act ("APA"). 28 U.S.C. § 2640(e); <u>see also</u> <u>Quiedan Co. v. United</u>

<u>States</u>, 927 F.3d 1328, 1331 (Fed. Cir. 2019). An agency final rule must be set aside if the court

holds it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law." 5 U.S.C. § 706(2)(A); <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto.</u>

<u>Ins. Co.</u>, 463 U.S. 29, 42 (1983) (citations omitted).

## III.    DISCUSSION

In determining whether the Final Rule conflicts with the statute, the court applies the

two-step framework established in <u>Chevron</u>, 467 U.S. at 842–43. First, the court must ascertain

whether Congress has "directly spoken to the precise question at issue." <u>Id.</u> at 842. If Congress's

intent is clear then "that is the end of the matter," as the agency and the court must "give effect to

the unambiguously expressed intent of Congress." <u>Id.</u> at 842–43. If the statute is "silent or

ambiguous with respect to the specific issue" then the court must determine whether the agency's

interpretation is "based on a permissible construction of the statute." Id. at 843. For the reasons

stated below, the court finds that the inquiry ends at step one because the Final Rule conflicts

with the unambiguous text of the statute.

### A.  The Definition of Drawback

To prevail, the agencies must succeed in both their redefinition of drawback, particularly

for the purposes of the "double drawback" prohibition of 19 U.S.C. § 1313(v), and in their

interpretation of numerous subsections of 19 U.S.C. § 1313. They fail in both.

Defendants claim that "drawback" includes instances in which "an unpaid tax liability

has been extinguished." Def. Br. at 10. Support for this proposition is found primarily in certain

provisions of Title 19 and 26 that use the phrase "drawback equal in amount to the tax found to

have been paid or determined." Id. at 11–12.[13] Defendants assert that "it is clear the term

'drawback' encompasses both remissions and refunds, applies to excise taxes as well as other

duties and fees, and covers both exports and imports." Id. at 14.

The agencies amended the applicable regulations to reflect this understanding of

drawback.  Prior to the changes at issue, the applicable regulation defined drawback as:

> Drawback means the refund or remission, in whole or in part, of a customs duty,
> fee or internal revenue tax which was imposed on imported merchandise under
> Federal law because of its importation, and the refund of internal revenue taxes
> paid on domestic alcohol as prescribed in 19 U.S.C. 1313(d) (see also § 191.3 of
> this subpart).

19 C.F.R. § 191.2(i) (2015). The new regulation reads:

> Drawback, as authorized for payment by CBP, means the refund, in whole or in
> part, of the duties, taxes, and/or fees paid on imported merchandise, which were
> imposed under Federal law upon entry or importation, and the refund of internal

---

[13] The government also cites a definition of drawback contained in a case regarding remission of
duties by the German government. See United States v. Passavant, 169 U.S. 16 (1898). The court
does not find this case instructive, as it interprets foreign law and was issued long-before the
Tariff Act of 1930.

> revenue taxes paid on domestic alcohol as prescribed in 19 U.S.C. 1313(d). More
> broadly, drawback also includes the refund or remission of other excise taxes
> pursuant to other provisions of law.

19 C.F.R. § 190.2. Although most of the changes to the definition are cosmetic, the addition of

the final sentence substantially expands the definition of drawback. Under the new definition,

Customs treats the "refund or remission" of excise taxes that occurs when merchandise is

exported as a drawback, which functionally prevents a company from then filing a claim for

drawback of charges assessed on a substitutable import.

    The statute does not provide a definition of drawback, so the court must ascertain the

ordinary meaning of the term. See Encino Motorcars, LLC v. Navarro, 138 S. Ct. 1134, 1140

(2018) (when a term is undefined in a statute, "we give the term its ordinary meaning.")

(citations omitted). The court "assume[s] that the terms have their ordinary, established meaning,

for which we may consult dictionaries." Info. Tech. & Applications Corp. v. United States, 316

F.3d 1312, 1320 (Fed. Cir. 2003) (citations omitted). Generally, "drawback" is understood to

mean the refund or cancellation of import duties, but can also mean the refund of domestic taxes,

such as excise taxes. See Drawback, Black's Law Dictionary (11th ed. 2019) ("a government

allowance or refund on import duties when the importer reexports imported products rather than

selling them domestically"); Oxford English Dictionary (2d ed. 1989) ("[a]n amount paid back

from a charge previously made; esp. a certain amount of excise or import duty paid back or

remitted when the commodities on which it has been paid are exported"); Barron's Dictionary of

Int'l Business Terms (3d ed. 2004) ("a rebate by a government, in whole or in part, of customs

duties assessed on imported merchandise that is subsequently exported."); Ballentine's Law

Dictionary (3d ed. 1969) ("The refund of duties paid upon the importation of materials used in

the manufacture or production of articles in the United States, when such articles are exported.");

Dictionary of Tariff Information (1924) (defining drawback as a "(1) a repayment in whole or in

part of customs duties paid on imported merchandise that is reexported . . . or (2) the refund

upon the exportation of an article of a domestic tax to which is has been subjected").

The question then becomes which definition or definitions Congress intended to be

applicable to Title 19. The agencies' new understanding is not supported by the statute, which

almost exclusively uses the term drawback in relation to duties and fees imposed upon

importation and then recovered. See generally 19 U.S.C. § 1313;[14] see also Ardestani v. I.N.S.,

502 U.S. 129, 135 (1991) (noting that a word "must draw its meaning from its context"). The

exception is 19 U.S.C. § 1313(d), which makes it clear that Congress intended excise taxes on

certain alcohol to be recovered as long as the product was not for sale or consumption in the

domestic market.

> Upon the exportation of flavoring extracts, medicinal or toilet preparations
> (including perfumery) manufactured or produced in the United States in part from
> domestic alcohol on which an internal-revenue tax has been paid, there shall be
> allowed a drawback equal in amount to the tax found to have been paid on the
> alcohol so used.
>
> Upon the exportation of bottled distilled spirits and wines manufactured or
> produced in the United States on which an internal revenue tax has been paid or
> determined, there shall be allowed, under regulations to be prescribed by the
> Commissioner of Internal Revenue, with the approval of the Secretary of the
> Treasury, a drawback equal in amount to the tax found to have been paid or
> determined on such bottled distilled spirits and wines. In the case of distilled
> spirits, the preceding sentence shall not apply unless the claim for drawback is
> filed by the bottler or packager of the spirits and unless such spirits have been
> stamped or restamped, and marked, especially for export, under regulations
> prescribed by the Commissioner of Internal Revenue, with the approval of the
> Secretary of the Treasury.

---

[14] See, e.g., 19 U.S.C. §§ 1313(b)(1) (using drawback as to "imported duty-paid merchandise");
1313(j) (unused merchandise drawback of charges import "upon entry of importation"); 1313(k)
(liability for drawback claims referring to charges on imported merchandise); 1313(l)(2)
(drawback used in reference to charges paid on imported merchandise); 1313(y) (drawback of
duties paid on merchandise upon importation from United States insular possessions).

19 U.S.C. § 1313(d) (emphasis added). This section does refer to the refund of "paid or determined" internal revenue tax as "drawback," but this section notably does not call internal revenue taxes never paid or determined "drawback," as the agencies attempt to apply the term.

26 U.S.C. § 5062(b) (using "drawback to refer to a refund of "tax found to have been paid or determined"), on which the government relies, is similarly structured and suffers from the same limitation. In Title 26, the term "drawback" consistently is used only with reference to taxes paid or determined,[15] and is not applied to all of the scenarios to which the agencies now attempt to apply the term. See, e.g., 26 U.S.C. §§ 5053(a) (beer is exported without payment of tax), 5214(a) (exported spirits are removed from bond free of tax), 5362(c) (wine exported without tax having been paid or determined does so without payment of tax). Title 26 does not use drawback to refer to instances in which excise tax is never paid or determined. The government's argument for "substance over form" in regard to this glaring discrepancy is not well-taken. See Def. Br. at 12. Had Congress intended "drawback" to describe all the instances in Title 26 to which the agencies attempt to apply the term, it would not have selectively used the terms in some sections, but not others. See Russello v. United States, 464 U.S. 16, 23 (1983) ("It is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" of language.).

In addition to lacking statutory support in either Title 19 or Title 26, the agencies' expanded definition makes no logical sense. Excise tax is often never paid on exported alcohol.

---

[15] See 26 U.S.C. §§ 5055 (drawback for taxes paid on exported beer), 5062(b) & 5114 (drawback on taxes paid or determined on wine or distilled spirits), 5706 (drawback for taxes paid on exported tobacco and certain related products).

See 26 U.S.C. §§ 5053(a), 5214(a)(4), 5362(c)(1).[16] Although some companies under Title 26

receive a refund of excise taxes previously paid on goods that are then exported, in order for

Customs' prohibition on "double drawback" to have the reach it intends with the Final Rule,

"drawback" must also include instances in which excise tax is never "paid or determined"[17] on

exported merchandise. See 26 U.S.C. §§ 5704(b), 5214(a), 5362(c). This latter situation is

nonsensical. A tax that has never been paid cannot naturally be said to have been "drawn back."

Accordingly, there is no statutory support for the expansive definition in the Final Rule

that extends drawback to situations in which tax is never paid or determined. Further, as noted in

the following section, the statute unambiguously forecloses the agencies' definition.

### B. Resulting Statutory Conflicts

Without the benefit of the expanded definition of drawback, the agencies' argument

unravels. Even if, however, the court were to attempt to apply the new definition, the Final Rule

creates irreconcilable conflicts with statutory provisions that evince that the agencies' Final Rule

is not a valid interpretation of the statute.  After referring to the non-payment of excise tax on

exports as a "drawback," the agencies then evoke 19 U.S.C. § 1313(v), which prohibits a single

export from serving as a basis for multiple drawback claims, so as to prevent a company from

filing a substitution drawback claim on the basis of an export on which no excise tax was paid. In

addition, the Final Rule limits drawback claims on exported or destroyed substituted

---

[16] Each of these sections notes conditions, such as removal from bonded facilities, when exported beer (26 U.S.C. §§ 5053(a)), distilled spirits (26 U.S.C. § 5214(a)(4)), or wine (26 U.S.C. § 5362(c)(1)), can be removed without payment of tax.

[17] NAM cites legislative history to state: "[w]ith respect to the tax on distilled spirits [determined] is used in instances where the tax is determined and paid at the time the spirits are withdrawn from bond, as well as in instances where the amount of the tax to be paid is computed and fixed at the time the spirits are withdrawn from bond." See NAM Br. at 29 (citing S. Rep. No. 85-2090, § 5006 (1958) reprinted in 1958 U.S.C.C.A.N. 4395, 4492).

merchandise "to the amount of taxes paid (and not returned by refund, credit, or drawback) on

the substituted merchandise." Final Rule, 84 Fed. Reg. at 65,008, 65,012, 65,029,65,064, 65,066;

see also 19 C.F.R. §§ 190.171(c)(3), 190.22(a)(1)(ii)(C), 190.32(b)(3), 191.171(d), 191.22(a),

and 191.32(b)(4). These understandings directly conflict with other statutory provisions, most

notably 19 U.S.C. § 1313(j)(2) and 19 U.S.C. § 1313(l)(2).

Section 1313(j)(2) (unused merchandise drawback) is categorical in stating that with

respect to "imported merchandise on which was paid any duty, tax, or fee imposed under Federal

law upon entry or importation" that "notwithstanding any other provision of law, upon the

exportation or destruction of such other merchandise an amount calculated pursuant to

regulations prescribed by the Secretary of the Treasury under subsection (l) shall be refunded as

drawback." 19 U.S.C. § 1313(j)(2). The Supreme Court held that a "notwithstanding" section

"override[s] conflicting provisions of any other section." Cisneros v. Alpine Ridge Grp., 508

U.S. 10, 18 (1993); see also Nat'l Labor Relations Bd. v. SW General, Inc., 137 S. Ct. 929, 940

(2017) (noting that "'notwithstanding' clauses show that one provision prevails over another in

the event of a conflict."). For this court to hold otherwise would be to render the word

"notwithstanding" meaningless. Drawback is simply not conditioned on the tax status of the

substituted merchandise. That consideration finds no basis in the statute. Defendants argue that

an interpretation contrary to its new understanding of section 1313(v) would "override

§ 1313(v)'s prohibition on double drawback," Def. Br. at 23, but in fact a contrary reading would

maintain the consistent interpretation of section 1313(v) to prohibit a single export from serving

as a basis for multiple drawback claims, as the term "drawback" in this context has long been

understood. See, e.g. HQ 229892, 2003 WL 22408906, at *5 (July 3, 2003) (noting that section

1313(v) "prevents multiple drawback claims on the same exported or destroyed merchandise.").

Section (j)(2) is unequivocal and mandates that drawback "shall" issue so long as the enumerated preconditions are met.  These preconditions do not include a requirement that a company paid tax on its exports in order to claim drawback on charges assessed on its imports.

The agencies' interpretation of section 1313(v) also creates a conflict between sections 1313(d) and 1313(j)(2). As noted above, 1313(d) uses the term drawback in reference to the refund of internal revenue taxes paid on exported distilled spirits and wine. The TFTEA added to section 1313(j)(2), that "drawback shall be allowed under this paragraph with respect to wine if the imported wine and exported wine are of the same color and the price variation between the imported and exported wine does not exceed 50 percent." See TFTEA, 130 Stat. at 228; see also 19 U.S.C. § 1313(j)(2). For this provision to have any effect, drawback under section 1313(v) cannot be understood to prevent drawback from occurring under section 1313(j)(2) because of a refund of taxes under section 1313(d). To do so would further undermine the "notwithstanding and other provision of law" language in section 1313(j)(2). The agencies' interpretation of section 1313(v) creates an irreconcilable conflict with the clear and superseding language of section 1313(j)(2) and thus cannot withstand scrutiny under Chevron step one.

Additionally, in promulgating section 1313(l)(2) Congress introduced limiting language on the agencies' previously broad-reaching ability to simply "prescribe regulations for determining the calculation of amounts refunded as drawback under [§ 1313]." 19 U.S.C. § 1313(1)(2)(A). The new subsection entitled "[c]alculation of drawback" delineates a clear calculation procedure. Id. In doing so, Congress set limits on how to determine the amount to be refunded and made clear that refunds were not limited to the charges actually paid on the imported or exported merchandise, but are based on the "fees that would apply to the exported

article if the exported article were imported." 19 U.S.C. § 1313(1)(2)(B)(i)(II). Defendants'

interpretation of 19 U.S.C. § 1313(v) to disallow exports on which excise tax was not paid from

serving as substituted merchandise largely nullifies the alternative calculation methodology

described in 19 U.S.C. § 1313(1)(2)(B)(i)(II) and cannot stand. See Manhattan Gen. Equip. Co.

v. Comm'r of Internal Revenue, 297 U.S. 129, 134 (1936) ("A regulation which does not [effect

the will of Congress], but operates to create a rule out of harmony with the statute, is a mere

nullity."). It is not a rational reading of the statute to interpret Congress' intent to liberalize

drawback to impose a restriction on drawback that did not previously exist. Section 1313(l)

clearly envisions taxes that "would apply" not taxes that did apply. 19 U.S.C. § 1313(l)(2).

Defendants attempt to support their reading of section 1313(v) in part by citing section

1313(u), which states that "[i]mported merchandise that has not been regularly entered or

withdrawn for consumption shall not satisfy any requirement for use, exportation, or destruction

under this section." Def. Br. at 15 (citing 19 U.S.C. § 1313(u)).  But section 1313(u) only applies

to merchandise that was imported (and then exported or destroyed),[18] this provision simply does

not apply to domestic merchandise. See 19 U.S.C. § 1313(u). Customs' own guidance confirms

that 1313(u) does not apply to domestic merchandise:

> As stated above § 1313(u) was enacted to codify the prohibition against paying
> duty drawback on, among other things, the exportation of foreign merchandise
> upon which no duty had been paid. However, there is no similar rule against
> paying drawback on exported domestic goods that are substituted for imported
> duty-paid goods. The language of § 1313(u) states that "imported merchandise
> that has not been regularly entered . . ." (emphasis added) will not support a claim
> for drawback. Thus, this section only applies to imported goods and has no
> application to . . .domestic merchandise.

---

[18] Re-exportation without duty may occur as a result of various duty deferral or avoidance
programs (foreign trade zones, temporary importation under bond, etc.). See 19 C.F.R. § 181.53.
Obviously, section 1313(u), which is concerned with imports, applies to duty drawback and not
excise tax refunds. See 19 U.S.C. § 1313(u).

HQ 230591, 2005 WL 1230799, at *3 (Feb. 17, 2005). Accordingly, section 1313(u) does not

support defendant's understanding of section 1313(v).

Additionally, the Final Rule's limitation on drawback leads to what NAM refers to as an

"absurd result." NAM Br. at 17, 25, 32–35; see also CASI Br. at 12–13. The agencies'

interpretation of section 1313(v) would, by its text, prevent an untaxed export from serving as

substituted merchandise in a drawback claim on a corresponding import in any capacity. 19

U.S.C. § 1313(v) ("[M]erchandise that is exported or destroyed to satisfy any claim for drawback

shall not be the basis of any other claim for drawback.") (emphases added). This means that a

company both importing and exporting merchandise would be liable not just for the excise tax on

its imports, but for all non-excise tax charges assessed at import. Defendants argue that "[t]he

Rule merely prohibits double recovery of any particular assessment," but this reads into section

1313(v) a restriction that does not exist. Def. Br. at 14. The court cannot uphold a regulation that

produces irrational results simply because an agency does not intend such a result, and it will not

read into a statute limiting language to save an agency's interpretation.

Finally, Defendants argue that their interpretation of the statute is required to "vindicat[e]

the animating principle[s]" of both the federal excise tax and drawback regimes. Def. Br. 15–18.

These regimes are necessarily in tension with one another. Whereas the federal excise tax is a

revenue-raising tax, drawback is meant to encourage exports by allowing a refund of taxes paid

on imports.  See S. Rep. No. 85-2165 § 313(h) (1958), reprinted in 1958 U.S.C.C.A.N. 3576,

3577 (noting that drawback is "designed to relieve domestic processors and fabricators of

imported dutiable merchandise, in competing for export markets, of the disadvantages which the

duties on the imported merchandise would otherwise impose upon them."); see also H.R. Rep.

No. 114-114(I) (2015); S. Rep. No. 114-45 (2015).  Because these two regimes necessarily

cannot both operate with full force, a policy decision must be made regarding which to privilege when they collide. As the legislative history of the drawback regime demonstrates, it appears that Congress has repeatedly chosen to expand access to drawback at the expense of lost excise tax revenue. The agencies cannot now attempt to alter this policy choice by way of a regulation that does not comport with the animating statute.

The agencies' Final Rule runs afoul of the ordinary meaning of drawback and results in irreconcilable statutory conflicts. See 19 U.S.C. § 1313(j)(2) (notwithstanding clause undermined by agencies' interpretation of 19 U.S.C. § 1313(v)); 19 U.S.C. § 1313(l)(2)(B)(i)(ii) (agencies' interpretation renders this calculation of drawback section a nullity); 19 U.S.C. § 1313(v) (agencies' interpretation renders this provision unlawfully restrictive in a way even the agencies do not intend). The Final Rule is contrary to the clear intent of Congress as expressed in the language and structure of the statute. Accordingly, the court must hold the Final Rule unlawful.

### C.  Legislative History

Because the statutory text and structure forecloses defendants' interpretation, the court need not review the relevant legislative history. Nonetheless, the court's decision is well-supported by the legislative history of drawback. See Bd. of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp., 474 U.S. 361, 371–72 (1986) (holding that the plain reading of a statute foreclosed the Federal Reserve Board's regulation, but finding that the legislative history supported the plain reading).

Congress has several times addressed the issue of drawback since enacting the substitution drawback provision, 19 U.S.C. § 1313(j)(2), in 1984. In 1993, Congress added a provision that prevented merchandise exported or destroyed from satisfying multiple claims for drawback. See 19 U.S.C. § 1313(v). Then in 2004, Congress amended 19 U.S.C. § 1313(j)(2) to

require that drawback be paid "notwithstanding any other provision of law."[19] Although

Congress considered statutory amendments in 2007 that would have reduced drawback on

certain imported ethanol "by an amount equal to any Federal tax credit or refund of any Federal

tax paid on the merchandise with respect to which the drawback is claimed," those amendments

were not passed. 153 Cong. Rec. S7909, S7941, § 832(b) (June 19, 2007); 153 Cong. Rec.

S13774, S13927, § 12318(b) (Nov. 5, 2007). Further, in 2008, Congress liberalized substitution

drawback with regard to wine by allowing substitution for wine of the same color that is also

within 50 percent of the same price. See Pub. L. No. 110-234 §15421, 122 Stat. at 1547, codified

as amended 19 U.S.C. § 1313 (j)(2)(2008).  Following Congress's inaction to address the issue at

hand, Customs and Treasury proposed the following regulation change:

> For purposes of drawback of internal revenue tax imposed under Chapters 32, 38,
> 51, and 52 of the Internal Revenue Code of 1986, as amended (IRC), drawback
> granted on the export or destruction of substituted merchandise will be limited to
> the amount of taxes paid (and not returned by refund, credit, or drawback) on the
> substitute merchandise.

Drawback of Internal Revenue Excise Tax, 74 Fed. Reg. 52,928, 52,931 (Oct. 15, 2009) ("2009

Proposed Rule"). Many commenters, including several members of Congress, opposed the new

regulations. See A.R. 10–11, 83–84, 99–100. While statements of individual members of

Congress are by no means dispositive on the question of legislative intent, they do support the

court's conclusion. Eighteen legislators stated as follows:

---

[19] The 2004 amendments were in part a reaction to the Court of Appeals for the Federal Circuit's
decision in Texport Oil Co. v. United States, which found that certain non-import-specific taxes,
were not eligible for substitution drawback. See 185 F.3d 1291 (Fed. Cir. 1999). In amending the
statute, Congress made clear its intention to override Texport and to allow drawback on any
duty, tax, or fee imposed upon entry. See Shell Oil Co. v. United States, 688 F.3d 1376, 1380
(Fed. Cir. 2012) (describing the impetus for the amendments). The amendment replaced the
phrase "because of its importation" with "upon entry or importation" regarding circumstances in
which drawback was permissible. See 19 U.S.C. § 1313(j). This amendment clarified that excise
taxes were eligible for drawback under Title 19.

> The agencies have been heard many times on this issue and can continue to comment as Drawback Simplification makes its way through Congress. Noticing the proposed rules at this time amounts to challenging Congress by initiating a rulemaking that will run concurrently with Congressional action on the same subject in the context of pending [Customs] reauthorization legislation. We view these proposed rules as an attempt by the administering agencies to change existing law via rulemaking, pre-empting and negating the role of Congress.

A.R. 9–11. The agencies then withdrew the proposed regulations. See Drawback of Internal

Revenue Excise Tax, 75 Fed. Reg. 9,359–60 (Mar. 2, 2010) (Withdrawal of Notice of Proposed

Rulemaking). Congress took no action to pass any legislation that would address the agencies'

concerns as expressed in the 2009 Proposed Rule.

        This history demonstrates that Congress made a policy choice to encourage exports by

expanding the ability to claim drawback, even with the knowledge that industries may then avoid

some payment of excise tax. Congress is presumed to know that the wine industry was filing

substitution drawback claims in situations where no excise tax had been paid and yet did not

address the issue, and, in fact, appears to have at least indirectly sanctioned the practice. See 19

U.S.C. § 1313(l)(2)(D) (section added in the TFTEA that maintained the treatment of wine); see

also H.R. Rep. No. 114-376, at 221 (2016), reprinted in 2016 U.S.C.C.A.N. at 112 (noting that

"the existing treatment of wine under section 313(j)(2) of the Tariff Act of 1930 is preserved"). It

is not the court's role to undermine Congressional policy decisions.  Ultimately, the defendants'

Final Rule is unsupported by both the statute and the legislative history.

## D.  Alternative Arguments

        Because the court holds the challenged portions of the Final Rule to be an unlawful

interpretation of the statute, it will not address in detail arguments that the Final Rule was both

arbitrary and capricious and impermissibly retroactive. As to the retroactivity challenge, the

agencies' attempt to apply the Final Rule to claims filed before its effective date runs afoul of

fair notice. The regulatory quandary in which the agencies found themselves, whereby a period

during which no path for operation of the new statute existed, was one of the agencies' own

making as they delayed publishing regulations to implement the TFTEA until well after the

statutory deadline had lapsed. <u>See</u> <u>Tabacos de Wilson, Inc. v. United States</u>, Slip Op. 18-138,

2018 WL 4961917 (CIT Oct. 12, 2018).  On the other hand, the court notes that defendants made

seemingly valid policy arguments for why the "zeroed excise tax" scheme should not be

permitted. But statutes cannot be constructively amended through agency action; such power lies

with Congress. If the public fisc does suffer ultimately from uncollected excise tax, then it is up

to Congress to decide whether to remedy the situation.

## CONCLUSION

For the foregoing reasons the Final Rule is held unlawful as to the challenged

provisions.  Plaintiff shall propose a form of judgment by February 7, 2020. Defendant may

respond by February 18, 2020.


                                                                    /s/Jane A. Restani
                                                                Jane A. Restani, Judge

Dated: January 24, 2020
        New York, New York