UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, SENIOR JUDGE
_____
                                                    :
THE NATIONAL ASSOCIATION OF                         :
MANUFACTURERS,                                      :
                                                    :
                        Plaintiff,                  :
                                                    :
THE BEER INSTITUTE,                                 :
                                                    :
                    Plaintiff-Intervenor,           :
                                                    :       Court No. 19-00053
                v.                                  :
                                                    :
UNITED STATES DEPARTMENT OF                         :
THE TREASURY,                                       :
                                                    :
UNITED STATES CUSTOMS AND                           :
BORDER PROTECTION,                                  :
                                                    :
STEVEN T. MNUCHIN, in his official                  :
capacity as Secretary of the Treasury,              :
                                                    :
            and                                     :
                                                    :
JOHN SANDERS, in his official capacity              :
as Acting Commissioner of United                    :
States Customs Border Protection,                   :
                                                    :
                        Defendants.                 :
_____:

## **ORDER**

Upon consideration of defendants' motion for a stay of the enforcement of judgment and

suspension of drawback claims pending appeal, it is hereby

**ORDERED** that defendants' motion is granted; and it is further

**ORDERED** that the effectuation of Slip Op. 20-9 and Slip Op. 20-25 is stayed pending

the entry of a final and conclusive judgment after all appeals; and it is further

**ORDERED** that the processing of all drawback claims subject to the Final Rule—specifically, 19 C.F.R. §§ 190.171(c)(3), 190.22(a)(1)(ii)(C), 190.32(b)(3), 191.171(d), 191.32(b)(4), the final sentence of 19 C.F.R. § 191.22(a), and the final sentences of the definitions of "drawback" and "drawback claim" in 19 C.F.R. § 190.2—is suspended pursuant to 19 U.S.C. § 1504(a)(2), pending the entry of a final and conclusive judgment after all appeals.

SO ORDERED.

_____
Senior Judge

Dated: _____
New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, SENIOR JUDGE
_____

|  |  |  |
|---|---|---|
| THE NATIONAL ASSOCIATION OF MANUFACTURERS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| THE BEER INSTITUTE, | : | |
| | : | |
| Plaintiff-Intervenor, | : | |
| | : | Court No. 19-00053 |
| v. | : | |
| | : | |
| UNITED STATES DEPARTMENT OF THE TREASURY, | : | |
| | : | |
| UNITED STATES CUSTOMS AND BORDER PROTECTION, | : | |
| | : | |
| STEVEN T. MNUCHIN, in his official capacity as Secretary of the Treasury, | : | |
| | : | |
| and | : | |
| | : | |
| JOHN SANDERS, in his official capacity as Acting Commissioner of United States Customs Border Protection, | : | |
| | : | |
| Defendants. | : | |

_____

## MOTION FOR A STAY OF THE ENFORCEMENT OF JUDGMENT AND SUSPENSION OF DRAWBACK CLAIMS PENDING APPEAL

JOSEPH H. HUNT
Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

|                                         | CLAUDIA BURKE<br>Assistant Director |
|-----------------------------------------|-------------------------------------|
|                                         | JUSTIN R. MILLER<br>Attorney-in-Charge<br>International Trade Field Office |
| Of Counsel:                             |                                     |
| Daniel J. Paisley<br>U.S. Department of the Treasury | ALEXANDER VANDERWEIDE<br>Trial Attorney<br>Civil Division, U.S. Dept. of Justice |
| Alexandra Khrebtukova<br>Office of the Assistant Chief Counsel<br>International Trade Litigation<br>U.S. Customs and Border Protection | Commercial Litigation Branch<br>26 Federal Plaza, Room 346<br>New York, New York 10278<br>Tel. (212) 264-9230 or 0482<br>Attorneys for Defendants |
| Dated: April 17, 2020                   |                                     |

# TABLE OF AUTHORITIES

BACKGROUND ......................................................................................................... 2

ARGUMENT ............................................................................................................... 3

    I.  Standard Of Review .......................................................................................... 3

    II.  Each Prong For A Stay Pending Appeal Is Satisfied ........................................ 4

        A.  The Government Will Suffer Immediate Irreparable Harm Absent A Stay ............... 4

        B.  A Stay Will Not Substantially Injure Other Parties ..................................................... 7

        C.  The Public Interest Is Served By A Stay Of Judgment ............................................... 8

        D.  The United States Possesses A Significant Likelihood Of Success On Appeal .......... 9

CONCLUSION ........................................................................................................... 15

# TABLE OF CONTENTS

## Cases

American Grape Growers Alliance For Fair Trade v. United States,
    9 CIT 505 (1985) .................................................................................................. 9

American Motorists Ins. Co. v. Villanueva,
    706 F. Supp. 923 (1989) ...................................................................................... 9

Bohler-Uddeholm Corp. v. United States,
    23 CIT 801 (1999) ................................................................................................ 9

Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.,
    467 U.S. 837 (1984) ................................................................................ 3, 12, 14

DuPont De Nemours & Co. v. Phillips Petroleum Co.,
    835 F.2d 277 (Fed. Cir. 1987) ............................................................................. 9

Fundicao Tupy S.A. v. United States,
    696 F. Supp. 1525 (Ct. Int'l Trade 1988) ....................................................... 9, 10

Hartog Foods Int'l, Inc. v. United States,
    291 F.3d 789 (Fed. Cir. 2002) ............................................................................. 8

Heraeus-Amersil, Inc. v. United States,
   1 C.I.T. 270 (1981) .................................................................................................. 8, 9

Hilton v. Braunskill,
   481 U.S. 770 (1987) ..................................................................................................... 4

Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,
   945 F.2d 150 (6th Cir. 1991) ....................................................................................... 4

Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi,
   556 U.S. 366 (2009) ................................................................................................... 13

Nken v. Holder,
   556 U.S. 418 (2009) ..................................................................................................... 3

Nat'l Ass'n of Mfrs. v. U.S. Dep't of Treasury,
   Slip Op. 20-9 (2020) ..................................................................... 3, 10, 11, 12, 14

Nat'l Ass'n of Mfrs. v. U.S. Dep't of Treasury,
   Slip Op. 20-25 (2020) ............................................................................................. 3, 4

Scripps-Howard Radio, Inc. v. FCC,
   316 U.S. 4 (1942) ......................................................................................................... 3

Standard Havens Prods., Inc. v. Gencor Industries, Inc.,
   897 F.2d 511 (Fed. Cir. 1990) ..................................................................................... 4

**Statutes**

19 U.S.C. § 1313 ............................................................................................... 3, 10, 12

19 U.S.C. § 1313(d) ............................................................................................. 11, 14

19 U.S.C. § 1313(j)(2) .................................................................................. 3, 10, 12, 14

19 U.S.C. § 1313(l)(2) ................................................................................................ 10

19 U.S.C. § 1313(l)(2)(B) .................................................................................. 3, 12, 13, 14

19 U.S.C. § 1313(l)(2)(B)(i)(II) ................................................................................ 12

19 U.S.C. § 1313(n) ............................................................................................. 11, 12

19 U.S.C. § 1313(n)(2) ............................................................................................. 11

19 U.S.C. § 1313(n)(4) ............................................................................................. 11

19 U.S.C. § 1313(o) ............................................................................................. 11

19 U.S.C. § 1313(o)(3) ........................................................................................ 11

19 U.S.C. § 1313(r) .............................................................................................. 13

19 U.S.C. § 1313(u) ............................................................................................. 13

19 U.S.C. § 1313(v) ............................................................. 3, 10, 12, 13, 14, 15

19 U.S.C. § 1504 ..................................................................................................... 5

19 U.S.C. § 1504(a)(2) ........................................................................................... 7

19 U.S.C. § 1504(a)(2)(A) ................................................................................. 5, 6

19 U.S.C. § 1504(a)(2)(B) ................................................................................. 5, 6

19 U.S.C. § 1504(a)(2)(C) ................................................................................. 5, 6

19 U.S.C. § 1504(b) ............................................................................................... 6

19 U.S.C. § 1504(b)(1)-(2) .................................................................................... 6

19 U.S.C. § 1514 .................................................................................................... 6

19 U.S.C. § 1514(a) ............................................................................................... 7

19 U.S.C. § 1514(a)(5)-(6) .................................................................................... 6

19 U.S.C. § 1623 ..................................................................................................... 9

19 U.S.C. § 1677h ................................................................................................ 13

26 U.S.C. § 5051(a)(1)(A) ................................................................................... 11

26 U.S.C. § 5053 .................................................................................................. 11

26 U.S.C. § 5053(a) .............................................................................................. 11

26 U.S.C. § 5054(a)(1) ......................................................................................... 11

26 U.S.C. § 5055 .................................................................................................. 14

26 U.S.C. § 5062(b) ........................................................................................ 11, 14

26 U.S.C. § 5114 ..................................................................................................... 14

26 U.S.C. § 5175 ..................................................................................................... 11

26 U.S.C. § 5362 ..................................................................................................... 11

26 U.S.C. § 5704(b) ................................................................................................ 11

26 U.S.C. § 5706 ..................................................................................................... 14

Miscellaneous Trade and Technical Corrections Act of 2004,
   Pub. L. 108–429, 118 Stat 2434 (December 3, 2004) ............................................. 5

**Rules**

Fed. R. App. P. 4(a)(1)(B) ......................................................................................... 3

USCIT Rule 62 ......................................................................................................... 4

USCIT Rule 62(e) ..................................................................................................... 4

USCIT Rule 65 ......................................................................................................... 1

**Regulations**

19 C.F.R. § 190.171(c)(3) ......................................................................................... 2

19 C.F.R. § 190.2 ..................................................................................................... 2

19 C.F.R. § 190.22(a)(l)(ii)(C) ................................................................................. 2

19 C.F.R. § 190.3(b) .............................................................................................. 13

19 C.F.R. § 190.3(C) .............................................................................................. 13

19 C.F.R. § 190.32(b)(3) .......................................................................................... 2

19 C.F.R. § 190.32(b)(4) .......................................................................................... 2

19 C.F.R. § 191.171(d) ............................................................................................ 2

19 C.F.R. § 191.22(a) ............................................................................................... 2

19 C.F.R. § 191.3(b) .............................................................................................. 13

19 C.F.R. § 191.3(c) .................................................................................................... 13

27 C.F.R. § 25.93 ........................................................................................................ 12

27 C.F.R. § 44.61 ........................................................................................................ 11

27 C.F.R. § 44.66 ........................................................................................................ 11

**Other Authorities**

*Modernized Drawback*,
   83 Fed. Reg. 64,942, 65,008, 65,011 (Dec. 18, 2018) ............................................. 2

S. Rep. No. 108–28, at 172 (2003) ................................................................................ 5

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, SENIOR JUDGE

———————————————————————————————

| | |
|---|---|
| THE NATIONAL ASSOCIATION OF MANUFACTURERS, | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| THE BEER INSTITUTE, | : |
| | : |
| Plaintiff-Intervenor, | : |
| | :    Court No. 19-00053 |
| v. | : |
| | : |
| UNITED STATES DEPARTMENT OF THE TREASURY, | : |
| | : |
| UNITED STATES CUSTOMS AND BORDER PROTECTION, | : |
| | : |
| STEVEN T. MNUCHIN, in his official capacity as Secretary of the Treasury, | : |
| | : |
| and | : |
| | : |
| JOHN SANDERS, in his official capacity as Acting Commissioner of United States Customs Border Protection, | : |
| | : |
| Defendants. | : |

———————————————————————————————

**<u>MOTION FOR A STAY OF THE ENFORCEMENT OF JUDGMENT AND
SUSPENSION OF DRAWBACK CLAIMS PENDING APPEAL</u>**

Pursuant to Rule 62 of the Rules of this Court, defendants (the Government) respectfully request that the Court stay the enforcement of its judgment of February 18, 2020, pending the Government's appeal.  The Government also respectfully requests that, pending the Government's appeal, the Court suspend the processing of all drawback claims involving the regulatory provisions held unlawful and set aside by the Court in its judgment.

Absent the Court's intervention to preserve the *status quo* pending the finality of all appeals, the Government will be unable to recover refunds issued to "double drawback" claimants in the event that the challenged regulatory provisions are upheld on appeal.  Should the Court's judgment be affirmed on appeal, plaintiff will not be harmed by the relief requested, as drawback claimants can receive the full amount of drawback refunds available under the law.

On April 15, 2020, Mr. Tobias Loss-Eaton of Sidley Austin LLP, counsel for the National Association of Manufacturers (NAM), plaintiff, advised that NAM does not consent to the relief requested by this motion.  On April 16, 2020, Mr. James Tysse of Akin Gump Strauss Hauer & Feld LLP, counsel for the Beer Institute, plaintiff-intervenor, advised that the Beer Institute does not consent to the relief requested by this motion.

## BACKGROUND

This case concerns regulations promulgated by the Department of Treasury (Treasury) and U.S. Customs and Border Protection (CBP) (collectively, the agencies) to restrict the "zeroed excise tax" or "double drawback" of federal excise taxes.  *See Modernized Drawback*, 83 Fed. Reg. 64,942, 65,008, 65,011 (Dec. 18, 2018).  NAM and the Beer Institute challenged portions of the regulations codified at 19 C.F.R. §§ 190.22(a)(1)(ii)(C), 190.32(b)(3), 190.171(c)(3), the final sentence of 191.22(a), 191.32(b)(4), and 191.171(d), as well as the regulatory definitions of the terms "drawback" and "drawback claim" in 19 C.F.R. § 190.2 (together, the Final Rule).[1]

---

[1] The Final Rule amended the regulatory definitions of the terms "drawback" and "drawback claim" in 19 C.F.R. § 190.2 to clarify that the terms encompass "the refund or remission" (and "claims for refund or remission") "of other excise taxes pursuant to other provisions of law," including the Internal Revenue Code.  83 Fed. Reg. 64,998 (AR 2236).  With these amendments, the Rule clarified that the terms "drawback" and "drawback claim" apply not only to filing claims for (and receiving) refunds of duties, taxes, or fees paid on imported articles, but include refunds or remission of excise taxes on exports as well.

NAM argued that the Final Rule violates 19 U.S.C. § 1313, is arbitrary and capricious, and is unlawfully retroactive.

The Court held unlawful and set aside the Final Rule under the analytical framework established in *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  Slip Op. 20-9 (Jan. 24, 2020).  The Court held that the Final Rule conflicted with the unambiguous meaning of 19 U.S.C. § 1313, specifically subsections 1313(j)(2) and 1313(*l*)(2)(B).  *Id*. at 8-9, 14-16.  The Court also concluded that the Final Rule's definition of "drawback" lacks statutory support in both Titles 19 and 26.  *Id*. at 12-13.  The Court further concluded that the agencies' interpretation of 19 U.S.C. § 1313(v) leads to an "absurd result."  *Id*. at 17.

Judgment was entered on February 18, 2020.  Slip Op. 20-25 (Feb. 18, 2020).  In the judgment order, apart from holding unlawful the Final Rule, the Court declared that "Defendants must process and pay substitution drawback claims that comply with the governing statutory and regulatory requirements[.]"  *Id*.

We timely filed a notice of appeal to the United States Court of Appeals for the Federal Circuit on April 17, 2020.  Fed. R. App. P. 4(a)(1)(B).

## ARGUMENT

### I.    Standard Of Review

"The power to stay a judgment pending appeal is part of a court's 'traditional equipment for the administration of justice.'"  *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9-10 (1942)).  The Supreme Court has identified the four factors to be analyzed in determining whether to stay the enforcement of a judgment pending appeal:

> (1) whether the stay applicant has made a strong showing that he is
> likely to succeed on the merits; (2) whether the applicant will be

3

> irreparably injured absent a stay; (3) whether issuance of the stay
> will substantially injure the other parties interested in the
> proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citations omitted); *see also Standard Havens Prods., Inc. v. Gencor Industries, Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990).

The Court balances these factors. *See, e.g., Standard Havens*, 897 F.2d at 512-13 (observing that "'[e]ach factor, however, need not be given equal weight.'. . . 'the four stay factors can effectively merge . . . , '[i]n considering whether to grant a stay pending appeal, this court assesses movant's chances for success on appeal and weighs the equities as they affect the parties and the public'" (citations omitted)); *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) ("These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together").

Notably, the Court has discretion to require less than a "strong showing" of success on appeal if the harm to the movant is especially great. *Standard Havens*, 897 F.2d at 513 (citing *Hilton*, 481 U.S. at 776).

When it is the United States that is considering an appeal, Rule 62(e) provides that "no bond, obligation, or other security shall be required from the appellant." Rule 62 does not provide for a bond to be required of an appellee.

## II.   Each Prong For A Stay Pending Appeal Is Satisfied

### A.   The Government Will Suffer Immediate Irreparable Harm Absent A Stay

Absent a stay of judgment, the Government faces immediate irreparable harm. The Court has ordered that CBP "must process and pay substitution drawback claims that comply with the governing statutory and regulatory requirements." Slip Op. 20-25. If the Court's judgment is

reversed on appeal, and a stay is not entered at this time, CBP runs the risk of processing and paying substitution drawback claims that are eventually deemed invalid.

Moreover, absent the Court's intervention to preserve the *status quo* pending the finality of all appeals, the Government will likely suffer irreparable harm because unprocessed substitution drawback claims that implicate the Final Rule may become deemed liquidated by operation of law before the appeals process has finalized. Should this occur, substitution drawback claimants may be entitled to refunds at the amounts asserted, even if the Final Rule is ultimately upheld on appeal.

Section 1563 of the Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. 108–429, 118 Stat 2434 (December 3, 2004), amended 19 U.S.C. § 1504 to provide for the deemed liquidation of drawback claims. Before that time, the law "[did] not require the liquidation of drawback claims within a statutory time frame." S.Rep. No. 108–28, at 172 (2003). As amended, 19 U.S.C. § 1504 now provides:

> Except as provided in subparagraph (B) or (C), unless an entry or claim for drawback is extended under subsection (b) or suspended as required by statute or court order, an entry or claim for drawback not liquidated within 1 year from the date of entry or claim shall be deemed liquidated at the drawback amount asserted by the claimant or claim.

19 U.S.C. § 1504(a)(2)(A).[2]

Thus, with two limited exceptions, the statute provides that all drawback claims "shall be deemed liquidated at the drawback amount asserted by the claimant or claim" if not liquidated

---

[2] Subparagraph (B) applies only with respect to "an entry or claim for drawback whose designated or identified import entries have not been liquidated," wherein the claimant files a written request for the liquidation of the drawback entry or claim based on the estimated duties deposited for the unliquidated imported merchandise and "must include a waiver of any right to payment or refund under other provisions of law." 19 U.S.C. § 1504(a)(2)(B). Subparagraph (C) applies only with respect to "an entry or claim for drawback filed before December 3, 2004." 19 U.S.C. § 1504(a)(2)(C).

within one year from the date of claim filing unless CBP affirmatively "extend[s]" the claim

under 19 U.S.C. § 1504(b) or the claim is "suspended as required by statute or court order." 19

U.S.C. § 1504(a)(2)(A)-(C).

> Extension by CBP is authorized under 19 U.S.C. § 1504(b) where
>
> (1) the information needed for the proper appraisement or classification of the imported or withdrawn merchandise, or for determining the correct drawback amount, or for ensuring compliance with applicable law, is not available to [CBP]; or
>
> (2) the importer of record or drawback claimant, as the case may be, requests such extension and shows good cause therefor.

19 U.S.C. § 1504(b)(1)-(2).  Here, CBP may not have a statutory basis for extending the

liquidation of some pending "double drawback" claims.  Such claims will, therefore, become

deemed liquidated at the drawback amounts asserted within a year of filing the claims.

Even for those pending "double drawback" claims that CBP is able to extend the

liquidation, the claims may nonetheless become deemed liquidated four years from the date of

claim filing.  Thus, if the validity of the Final Rule remains uncertain at the expiration of four

years from the date of filing (which for some claims occurred years ago), then such drawback

claims may be "deemed liquidated at the drawback amount asserted by the claimant or claim."

19 U.S.C. § 1504(b).

Since the amount at which a drawback claim is liquidated is "final and conclusive upon

all persons (including the United States and any officer thereof)" unless an administrative protest

is filed under 19 U.S.C. § 1514, CBP may be required to pay "the drawback amount asserted"

(*i.e.*, the "double drawback" of excise taxes) even if the Final Rule is upheld on appeal.  19

U.S.C. § 1514(a)(5)-(6).  This would cause irreparable harm to the Government in the form of

significant revenue loss, which the statute does not provide any basis to recover, even if the

Government ultimately prevails on appeal.

Accordingly, in order to preserve the *status quo* and ensure that all substitution-based claims for the drawback of excise taxes are properly liquidated in accordance with all applicable laws, it is necessary that such claims be "suspended … by … court order."  19 U.S.C. § 1504(a)(2).  Only a court-ordered suspension would ensure that the Government is not irreparably harmed by the deemed liquidation of claims at the drawback amounts asserted.

If, on the contrary, CBP is ordered to process substitution-based claims for the drawback of excise taxes, without regard to the challenged regulatory provisions and before the Federal Circuit has reached its decision on the appeal, the Government will have forfeited all amounts of drawback that have already been paid for liquidated claims.  *See* 19 U.S.C. §1514(a).  As a result, the Government would be unable to retrieve the excise tax refunds that may later be declared to have been contrary to law, and thus, improperly paid.  This scenario would likely result in a massive loss of revenue to the United States.  Indeed, "double drawback" claims for excise tax filed between February 24, 2018 and March 16, 2020 total $383 million.  Assuming future claims are filed at a similar rate, the Government could expect additional claims of $190 million over the next year.  Accordingly, the Government could suffer immediate irreparable harm absent a stay of the Court's judgment and suspension of processing claims.

**B.   A Stay Will Not Substantially Injure Other Parties**

On the other side of the ledger, a stay would not substantially injure Plaintiffs.  Even if a stay is entered and NAM prevails on an appeal, double drawback claimants will receive the full amount of excise taxes refunds that they are entitled to by law.  And that amount will be unburdened by any limitations on the drawback of excise tax imposed by the Final Rule.  Thus, NAM's members will ultimately be able to recoup all eligible refunds on pending claims once

the Court's decision is upheld and the claims liquidate. Accordingly, NAM will not be substantially injured by any delay resulting from an appeal.

This is particularly important given the context, where drawback is not a right but a privilege. *See Hartog Foods Int'l, Inc. v. United States*, 291 F.3d 789, 793 (Fed. Cir. 2002) (citations omitted). Drawback claimants may only receive refunds once they comply with all statutory and regulatory requirements. *See id.* The Government is seeking, through appeal, a final judgment as to whether those requirements include the Final Rule. Paying double drawback claims now, before the appeals process has been finalized, prioritizes the expediency of processing drawback claims to the irrevocable advantage of claimants and, as discussed above, to the Government's much more significant and irreparable detriment (to the tune of hundreds of millions of dollars) should it prevail on appeal.

Further, to our knowledge, CBP has never granted any claims resulting in the double drawback of excise taxes for distilled spirits, beer, tobacco, or taxable fuels. Staying the Court's judgment pending appeal does not reflect a change in CBP's treatment of these products. In other words, apart from wine, claimants have not had an expectation that their substitution double drawback claims of excise taxes would be paid because such claims have never been paid. It is only if the Final Rule is permanently invalidated that this longstanding treatment will change. As a result, a stay does not represent the imposition of financial harm on claimants; rather, it preserves the *status quo* for most until the appeals process has been finalized.

### C. **The Public Interest Is Served By A Stay Of Judgment**

The public interest would be served by maintenance of the *status quo* during any appeal for two reasons. Protection of the public fisc is an important consideration in deciding whether to stay the enforcement of a judgment pending the resolution of an appeal. *See, e.g., Heraeus-*

*Amersil, Inc. v. United States*, 1 C.I.T. 270 (1981). The public has an interest in protecting the revenue of the United States and in assuring compliance with the trade laws. *See* 19 U.S.C. § 1623; *American Motorists Ins. Co. v. Villanueva*, 706 F. Supp. 923, 933 (1989).

Although the Court set aside the Final Rule, the basis for the regulations were not taken negligently or in bad faith, but to protect the revenue and the integrity of the excise tax regime. The revenue should continue to be protected in a way that will permit consideration of these issues by the court of appeals.

Moreover, the public interest is served by having clear procedures in place to effect compliance with governing regulations, including those at issue here. The public would be disserved if CBP were to undertake a massive regulatory overhaul to implement the Court's judgment with respect to the filing and processing of substitution claims, only to have to reverse course and dismantle that regulatory framework if the judgment is ultimately reversed on appeal. Accordingly, the public interest would be served by a stay to permit appeal.

### D. The United States Possesses A Significant Likelihood Of Success On Appeal

The Court need not repudiate its own order to conclude that the likelihood of success criterion is met. Rather, it is enough to conclude that "substantial legal questions" exist. *E.I. DuPont De Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987); *see also Bohler-Uddeholm Corp. v. United States*, 23 CIT 801 (1999) (recognizing that it ruled against the plaintiffs, the Court nevertheless holds that there are "serious and substantial questions for appeal"); *American Grape Growers Alliance For Fair Trade v. United States*, 9 CIT 505, 507 (1985) (for purposes of determining whether a stay pending appeal is warranted, "the likelihood of success of an appeal is a somewhat anomalous factor and may safely be given slight attention"); *Fundicao Tupy S.A. v. United States*, 696 F. Supp. 1525, 1529 (Ct. Int'l Trade

1988) ("by granting the stay pending appeal of the final judgment . . ., we did not adhere to so strict a standard as to require showing that plaintiffs' position is likely to prevail on appeal").

First, this case presents serious and substantial questions concerning 19 U.S.C. § 1313, most notably the interplay of sections 1313(v), 1313(j)(2), and 1313(*l*)(2), and the deference—or lack thereof—afforded to the agencies' interpretation of these statutory provisions in promulgating regulations that concern both Titles 19 and 26 of the United States Code.  As such, the Court's holding setting aside the Final Rule invariably presents a question of first impression that warrants consideration by the Court of Appeals for the Federal Circuit.

Second, the Court's decision also presents novel and substantial questions of importance concerning the reach and scope of the term "drawback."  The Court limited the undefined tariff term "drawback" in Title 19 to only those instances expressly called "drawback," wherein "duties and fees imposed upon importation [are] then recovered."  Slip Op. 20-9 at 11-12. Similarly, with respect to Title 26, the Court limited the undefined tariff term "drawback" to only those instances expressly called "drawback" in which taxes have been paid or determined.  *Id*. at 12.  There is a chance that the Federal Circuit will find these definitions to be overly restrictive, and the Court's rejection of the Final Rule's definitions of "drawback" and "drawback claim" to be in error.

As the Court explained, "drawback" is most commonly and easily understood as a refund of import duties under certain conditions; however, the Court's restrictive view of "drawback" ignores those provisions in Titles 19 and 26 that expressly provide for a more expansive meaning of the term "drawback."  For instance, under Title 19, "drawback" expressly includes the refund of taxes that have been paid previously, but also an unpaid tax liability that is extinguished.  *See,*

*e.g.,* 19 U.S.C. §§ 1313(d), 1313(n)(2), (n)(4), (o)(3).  The Court's attempt to distinguish section

1313(d) did not address sections 1313(n) and (o).  Slip Op. 20-9 at 11-12.

    Further, like Title 19, "drawback" in Title 26 includes the refund of taxes that have been

paid or determined, but also an unpaid tax liability that is extinguished.  In the latter scenario,

wine and distilled spirits may be removed from bonded premises "without payment of tax" for

the purpose of export; however, these products are not "free of tax," as they are still subject to

bond and carry a tax liability up until the products are actually exported.  *See* 26 U.S.C. §§ 5053,

5175, 5362.

    Despite the Court's holding to the contrary, the appeals court reviews the question anew

and could very well hold that the extinguishment of a tax liability should reasonably be

understood as a "drawback."  Congress uses the term "drawback" in Title 26 to describe a refund

that is made upon exportation if the tax has already been paid, as well as to describe the

remission of a determined but not-yet-paid tax liability upon exportation.  The extinguishment of

tax liability when products are exported from bonded premises "without payment of tax" should

be no different.  Although the Internal Revenue Code does not expressly use the term

"drawback" to describe such a transaction, the parallel structure of both types of provisions

confirm that the transactions at issue (such as refunds, credits, and forgiveness of tax liability)

are identical in substance and thus fit comfortably within the meaning of that term.  *Compare* 26

U.S.C. § 5062(b) (using the term "drawback" to describe remission upon export of a tax liability

determined but not yet paid for wine and distilled spirits) *with* 26 U.S.C. § 5704(b), 27 C.F.R. §§

44.61, 44.66 (describing similar process for the remission of a tax liability for tobacco upon

export without using the term "drawback") *and* 26 U.S.C. §§ 5051(a)(1)(A), 5053(a), 5054(a)(1),

27 C.F.R. §§ 25.93, Subparts G, L, N (describing similar process for remission of tax liability imposed on beer upon its removal by export without using the term "drawback").

Third, the Court's decision raises serious and novel questions regarding the interplay of multiple statutory provisions. The Court ruled that, under the first step of *Chevron*, the Final Rule conflicted with the unambiguous meaning of 19 U.S.C. § 1313. Slip Op. 20-9 at 8-9. Specifically, the Court found that the Final Rule and the agencies' interpretation of section 1313(v) undermines the "clear and superseding" "notwithstanding any other provision of law" clause of subsection 1313(j)(2)[3] and "largely nullifies the alternative calculation methodology described in 19 U.S.C. § 1313(*l*)(2)(B)(i)(II)."[4]  *Id*. at 14-16.

When reviewing the Final Rule *de novo*, the Federal Circuit could find that the Court's *Chevron* step one analysis leads to untenable outcomes. For instance, if the "notwithstanding" clause of 19 U.S.C. § 1313(j)(2) overrides section 1313(v) entirely, as the Court's ruling implies, then the drawback statute does not even prohibit the payment of two or more substitution drawback claims based on the same substitute good, thus disabling the core application of section 1313(v).

Moreover, if 19 U.S.C. § 1313(j)(2)'s "notwithstanding" clause invalidates section 1313(v)'s prohibition on double drawback, then other provisions in the drawback scheme could be likewise nullified. For instance, the built-in limitations of section 1313(n) (which limits

---

[3] 19 U.S.C. § 1313(j)(2), which sets forth the criteria for substitution drawback claims of unused merchandise, applies "notwithstanding any other provision of law."

[4] In relevant part, 19 U.S.C. § 1313(*l*)(2)(B) states that the amount of drawback available on the basis of substituted unused merchandise shall be "equal to 99 percent of the lesser of (i) the amount of duties, taxes, and fees paid with respect to the imported merchandise; or (ii) the amount of duties, taxes, and fees that would apply to the [substituted] exported article if the exported article were imported[.]"

drawback claims based on exports to Mexico or Canada), section 1313(r) (which limits claims for drawback to within five years of importation), and section 1313(u) (which prohibits exports from customs bonded warehouses and foreign trade zones from serving as the basis for drawback claims) could all be negated when the drawback is based on the export of substitute goods.  In place of these provisions, tax- and duty-free exports under NAFTA, or exports from tax- and duty-free zones, could serve as the basis for substitute-drawback claims reaching back decades or even centuries.  The logic of the Court's ruling could also mean ignoring 19 U.S.C. § 1677h's clear prohibition on the drawback of antidumping duties and countervailing duties (thus creating an obvious way for importers to evade those laws), as well as the prohibition on granting drawback of any of the duties or fees listed in 19 C.F.R. §§ 191.3(b) and (c) for pre-TFTEA claims and in 19 C.F.R. §§ 190.3(b) and (c) for post-TFTEA claims.

It is for reasons like these that courts have long cautioned against literal constructions of "notwithstanding any other provision of law" clauses that "narrow so dramatically an important provision that [Congress] inserted in the same statute." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 386 (2009).

Similarly, the Court ruled that the agencies' interpretation of 19 U.S.C. § 1313(v) unlawfully limits and neuters subsection 1313(*l*)(2)(B).  In effect, the Court has concluded that the calculation of refund amounts under subsection 1313(*l*)(2)(B) takes precedence over section 1313(v)'s operational safeguards.  In this way, a provision designed solely to calculate drawback amounts has been allowed to override operative provisions of the drawback statute, including substantive limitations on what constitutes a valid drawback claim.  This may constitute reversible error.

Taken together, there is a substantial likelihood that the appeals court could find that sections 1313(*l*)(2)(B), (j)(2), and (v) do not unambiguously foreclose the Government's interpretation here, and therefore, the Court's *Chevron* step one analysis was made in error.  If so, the Federal Circuit may hold that a *Chevron* step two analysis is warranted and uphold the Final Rule as a reasonable interpretation of ambiguous statutory provisions.

Finally, the Court concluded that the Final Rule and the agencies' interpretation of 19 U.S.C. § 1313(v) leads to an "absurd result" because it "would, by its text, prevent an untaxed export from serving as substituted merchandise in a drawback claim on a corresponding import in any capacity."  Slip Op. 20-9 at 17.  The Court rejected the agencies' position that the Final Rule only prohibits double recovery of a particular fee, tax, or duty because "this reads into section 1313(v) a restriction that does not exist."  *Id*.  Despite the Court's interest in avoiding the "absurd result" that it sees in the Final Rule, an appellate court may find that the Court's decision perpetuates its own untenable results.

Whatever force the Court's reasoning has in avoiding the absurd result it sees in the Final Rule, it applies equally to any plausible interpretation of 19 U.S.C. § 1313(v).  Because even if section 1313(v) were limited to excise-tax refunds on exports expressly called drawback, then section 1313(v) must either bar drawback of all other assessments on the corresponding import or bar drawback only of excise-taxes on imports.

Yet the Court attempts to avoid 19 U.S.C. § 1313(v)'s interpretative ambiguities by giving the provision no effect at all.  The Court's decision implies that section 1313(v) does not even operate to prohibit double drawback under those provisions of Titles 19 and 26 that expressly provide for the drawback of taxes paid or determined.  *See* 26 U.S.C. §§ 5055, 5062(b), 5114, 5706; 19 U.S.C. § 1313(d).  Thus, even under the Court's restrictive definition of

"drawback," section 1313(v) does not do any work.  This untenable outcome could be overturned on appeal.

Accordingly, because the Government possesses a substantial likelihood of success on appeal or, at the least, our appeal presents substantial questions of importance requiring appellate resolution, the fourth factor weighs in favor of a stay of judgment.

## **CONCLUSION**

For these reasons, we respectfully request that the Court stay enforcement of its judgment pending resolution of the Government's appeal and suspend the processing of drawback claims that implicate the Final Rule pending the completion of all appeals.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

By:     /s/ Claudia Burke
CLAUDIA BURKE
Assistant Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

Of Counsel:

Daniel J. Paisley                                  /s/ Alexander Vanderweide
U.S. Department of the Treasury        ALEXANDER VANDERWEIDE
                                                              Trial Attorney
Alexandra Khrebtukova                      Civil Division, U.S. Dept. of Justice
Office of the Assistant Chief Counsel  Commercial Litigation Branch
International Trade Litigation              26 Federal Plaza, Room 346
U.S. Customs and Border Protection    New York, New York 10278
                                                              Tel. (212) 264-9230 or 0482
DATED: April 17, 2020                      Attorneys for Defendants

15

## **CERTIFICATE OF COMPLIANCE**

I, Alexander Vanderweide, an attorney in the Office of the Assistant Attorney General,

Civil Division, Commercial Litigation Branch, International Trade Field Office, who is

responsible for filing the Government's April 17, 2020 motion for a stay of judgment and

suspension of drawback claims pending appeal, relying upon the word count feature of the word

processing program used to prepare the motion, certify that this memorandum complies with the

word count limitation under the Court's chambers procedures, and contains 4673 words.

/s/ Alexander Vanderweide