# United States Court of Appeals for the Federal Circuit

---

**THE NATIONAL ASSOCIATION OF MANUFACTURERS, THE BEER INSTITUTE,**
*Plaintiffs-Appellees*

v.

**DEPARTMENT OF THE TREASURY, UNITED STATES CUSTOMS AND BORDER PROTECTION, JANET YELLEN, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY, TROY MILLER, IN HIS OFFICIAL CAPACITY AS SENIOR OFFICIAL PERFORMING THE DUTIES OF THE COMMISSIONER FOR U.S. CUSTOMS AND BORDER PROTECTION,**
*Defendants-Appellants*

---

2020-1734

---

Appeal from the United States Court of International Trade in No. 1:19-cv-00053-JAR, Senior Judge Jane A. Restani.

---

Decided: August 23, 2021

---

PETER D. KEISLER, Sidley Austin LLP, Washington, DC, argued for all plaintiffs-appellees. Plaintiff-appellee National Association of Manufacturers also represented by BARBARA GUY BROUSSARD, TOBIAS SAMUEL LOSS-EATON,

VIRGINIA ANNE SEITZ; CATHERINE EMILY STETSON, Hogan Lovells US LLP, Washington, DC.

JAMES EDWARD TYSSE, Akin Gump Strauss Hauer & Feld LLP, for plaintiff-appellee The Beer Institute. Also represented by LARS-ERIK ARTHUR HJELM, LIDE E. PATERNO, DEVIN S. SIKES.

AUGUST FLENTJE, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for all defendants-appellants. Also represented by CLAUDIA BURKE, JEFFREY B. CLARK, JEANNE DAVIDSON, JUSTIN REINHART MILLER, ALEXANDER J. VANDERWEIDE, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY; DANIEL J. PAISLEY, United States Department of the Treasury, Washington, DC.

ALEXANDRA KHREBTUKOVA, Office of the Assistant Chief Counsel, Bureau of Customs and Border Protection, United States Department of Homeland Security, New York, NY, for defendant-appellant United States Customs and Border Protection.

JOHN MICHAEL PETERSON, Neville Peterson LLP, New York, NY, for amicus curiae Customs Advisory Services, Inc. Also represented by PATRICK KLEIN, RICHARD F. O'NEILL.

Before LOURIE, PROST\*, and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

---

\*   Circuit Judge Sharon Prost vacated the position of Chief Judge on May 21, 2021.

This case involves the interaction of federal excise taxes and duty drawbacks for wine in the United States. The United States Government appeals from a judgment by the United States Court of International Trade holding that a set of regulations, collectively described herein as the Rule, promulgated in 2018 by the Department of Treasury and the United States Customs and Border Protection, are invalid as an unlawful interpretation of 19 U.S.C. § 1313(v).

The question presented on appeal is whether the Court of International Trade erred when it invalidated the Rule interpreting 19 U.S.C. § 1313(v) finding that the statute was unambiguous at step one of *Chevron*. We conclude that the Court of International Trade did not err in finding that the Rule, which redefines "drawback" to include excise tax liability on exports that have neither been "paid or determined," is contrary to the clear intent of Congress as expressed in the language and structure of the statute. Accordingly, we affirm the judgment of the Court of International Trade.

## BACKGROUND

This appeal concerns a set of regulations, promulgated in 2018 by the Department of the Treasury ("Treasury") and the United States Customs and Border Protection ("CBP" or "Customs"), described herein as the Rule.[1] The Rule is an interpretation of 19 U.S.C. § 1313(v), which states in relevant part:

---

[1] The Rule comprises the following regulations: 19 C.F.R. §§ 190.171(c)(3), 190.22(a)(1)(ii)(C), 190.32(b)(3), 191.171(d), 191.32(b)(4), the final sentence of 19 C.F.R. § 191.22(a), and the final sentence in the definition of "drawback" and "drawback claim" in 19 C.F.R. § 190.2.

> Merchandise that is exported or destroyed to satisfy any claim for drawback shall not be the basis of any other claim for drawback . . . .

19 U.S.C. § 1313(v).

Generally, imported goods are subject to a variety of payments, such as tariffs, duties, fees, and certain taxes, such as an excise tax. A "drawback" is a customs transaction involving the refund of any payments that were made upon the importation of a good. Drawbacks are designed to incentivize exports from the United States and allow U.S. exporters to compete more fairly with overseas competitors.

The most common form of drawback occurs when duties that are paid when a good is imported are refunded when the same good is exported. Another common form of drawback, known as a "substitution drawback," involves the refund of duties, taxes, or fees that were paid upon importation and refunded when similar goods, normally merchandise classified under the same subheading of the Harmonized Tariff Schedule of the United States ("USHTS"), are exported. *See* 19 U.S.C. § 1313(j)(2), 19 C.F.R. § 191.22(a). The statute most relevant to substitution drawbacks is 19 U.S.C. § 1313(j)(2), which states in relevant part:

> [W]ith respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law upon entry or importation [...] that [...] notwithstanding any other provision of law, upon the exportation or destruction of such other merchandise an amount calculated pursuant to regulations prescribed by the Secretary of the Treasury under subsection (*l*) shall be refunded as drawback.

19 U.S.C. § 1313(j)(2).

Since 2008, substitution drawback has been allowed for wine where the imported wine and exported wine are of the

same color and the price variation between the imported wine and the exported wine does not exceed fifty percent. *See* Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-234, § 15421, 122 Stat. 923, 1547 (May 22, 2008) (codified as amended at19 U.S.C. § 1313(j)(2)). Since this change, companies that both import and export wine or transfer its right to drawback have been claiming drawbacks for taxes, fees, and duties paid on the imported wine based on their exports of similar wine, i.e., substituted wine. As an example, if a company imported 100 bottles of red wine and then exported 100 bottles of similarly priced red wine, that company could claim drawback for nearly all charges assessed on the imported wine. J.A. 4. The substitution in the example can also result in a near total refund of both tariffs and excise taxes[2] paid on the imported wine. This can occur in situations where the substituted exported wine was either not subject to any excise tax by virtue of being exported from a bonded facility[3], or had received a complete refund of any previously paid excise taxes. This results in a "double drawback." J.A. 4. As a response to this practice, the Government promulgated the Rule to prevent "double recovery" of excise tax. J.A. 18–19.

---

[2] An excise tax is imposed on certain domestically consumed goods, regardless of origin, such as wine, beer, spirits, tobacco, and petroleum products. J.A. 2. Drawbacks of excise taxes may occur in multiple ways.

[3] An imported good is subject to tariffs, fees, and taxes upon "entry" in the United States. A good is deemed not to enter the United States if upon importation it is placed in a customs bonded warehouse. If the good is taken from a bonded warehouse and sold or consumed in the United States, the good has entered the United States and may be subject to tariffs and fees. But if the good is exported from a warehouse, no import duties are paid.

The Rule makes two fundamental changes to the drawback regime. First, it includes within the definition of "drawback" and "drawback claim" a "refund or remission of other excise taxes pursuant to other provisions of law." 19 C.F.R. § 190.2. Under this definition, the export of merchandise even without payment of an excise tax counts as a claim for drawback. *See* J.A. 5. Second, the Rule limits drawbacks to the amount of taxes paid and not previously refunded. *See* 19 C.F.R. §§ 190.171(c)(3), 190.22(a)(1)(ii)(C), 190.32(b)(3), 191.171(d), 191.22(a), and 191.32(b)(4). This second change prevents a domestically produced exported good, which would have been subject to the excise tax if made available for domestic use (sold or consumed), from qualifying for a claim for substitution drawback under the language of 19 U.S.C. § 1313(j)(2). J.A. 5.

The National Association of Manufacturers ("NAM") along with Intervenor, The Beer Institute,[4] brought suit against the Treasury and CBP arguing that the Rule is contrary to law, arbitrary and capricious, and impermissibly retroactive. J.A. 5. NAM raised three primary arguments: (1) the language of the statute dealing with substitution drawbacks, § 1313(j)(2), forecloses the agencies' interpretation of § 1313(v) because § 1313(j)(2) states that under certain conditions, the drawback shall be refunded "notwithstanding any other provision of law"; (2) the Rule's interpretation of § 1313(v) conflicts with § 1313(*l*)(2), which provides for the calculation of substitution drawback; (3) the Rule includes a prohibition not contemplated in § 1313(v), namely the prohibition of a substitution drawback for excise taxes paid on imported goods where the

---

[4] The Beer Institute submitted a brief concerning the retroactive application of the Rule. Because this court invalidates the Rule, those arguments are moot.

substitute exported goods were exempt from excise tax. J.A. 5–6.

The Government responded that the Treasury and CBP's interpretation of § 1313(v) is "reasonable, historically supported, and necessary to reconcile the purpose of federal excise tax with the drawback regime." J.A. 7. The Government further argued that a drawback is not only limited to taxes paid, but rather a drawback can extend to cover tax exemptions in order to prevent improper "piggybacking" of exception benefits onto drawback benefits. *Id.* (citing H.R. Rep. No. 103–361 at 130 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2552, 2680 (stating that 19 U.S.C. § 1313 "codifies current Customs practice against 'piggybacking' other duty exemption benefits (foreign-trade zones, bonded warehouses and duty-free temporary importation) onto the drawback benefits.").

NAM replied that the Government improperly attempts to revert the statute back to CPB's pre-2004 regime, which Congress rejected by allowing for the drawback of excise taxes. J.A. 7–8.

The United States Court of International Trade ("CIT") applied the two-part *Chevron* test to find that the Rule is unlawful as to the challenged provisions. Specifically, the CIT addressed whether Congress had "directly spoken to the precise question at issue." J.A. 8. If Congress's intent was clear, the CIT explained, then "that is the end of the matter," as the agency and the court must "give effect to the unambiguously expressed intent of Congress." *Id.* (citing *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842–43 (1984)). But if the statute is "silent or ambiguous with respect to the specific issue" then the court must determine whether the agency's interpretation is "based on a permissible construction of the statute." J.A. 9. Applying those principles, the CIT determined that the inquiry ends at step one because the Rule conflicts with the unambiguous text of the statute. *Id.*

The CIT also concluded that, while the CBP identified the aforementioned "double-drawback" issue and expressed its concern on multiple occasions to Congress, Congress took no steps to curtail the practice. J.A. 4. Specifically, referring to certain portions of the legislative history, the CIT observed that "it appears that Congress has repeatedly chosen to expand access to drawback at the expense of lost excise tax revenue. The agencies cannot now attempt to alter this policy choice by way of a regulation that does not comport with the animating statute." J.A. 18; *see also* J.A. 20.

## DISCUSSION

We review the CIT's interpretation of statutes and regulations de novo. *Abbott Labs. v. United States*, 573 F.3d 1327, 1330 (Fed. Cir. 2009). Courts review agencies' interpretations of statutes by applying the two-step *Chevron* framework. *See* 467 U.S. at 842–43 & n.9. In applying *Chevron*, the Court first uses "traditional tools of statutory construction" to determine whether Congress has "directly spoken to the precise question at issue"; if so, "that is the end of the matter." *Id.* at 843 & n.9. If not, the Court asks whether the regulation reflects "a permissible construction." *Id.* at 843.

To prevail, the Government must succeed in both its redefinition of "drawback," particularly for the purposes of the "double drawback" prohibition of 19 U.S.C. § 1313(v), and in its interpretation of numerous subsections of 19 U.S.C. § 1313.

I

The Government argues that "claim for drawback" includes not only refunds of already-paid excise taxes on imports under the Tariff Act, 19 U.S.C. § 1313(d), but also includes cancellation of excise-tax liability for exports that have neither been "paid or determined" under the Internal Revenue Code ("IRC"), 26 U.S.C. § 5362(c). *See* Appellant's

Br. 6–7. The Rule was created to reconcile the two separate provisions to address the non-collection of taxes on certain exported merchandise. *See* J.A. 7. 19 U.S.C. § 1313(d) reads in relevant part:

> Upon the exportation of bottled distilled spirits and wines manufactured or produced in the United States on which an internal-revenue tax has been paid or determined, there shall be allowed, under regulations to be prescribed by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, a drawback equal in amount to the tax found to have been *paid or determined* on such bottled distilled spirits and wines.

19 U.S.C. § 1313(d) (emphasis added). 26 U.S.C. §5362(c) of the IRC states, in relevant part, that wine, "on which tax has not been paid or determined" may be withdrawn from a bonded facility[5] "without payment of tax for export."

Prior to the Government's promulgation of the Rule, the applicable regulation defining drawback was the following:

> Drawback means the refund or remission, in whole or in part, of a customs duty, fee or internal revenue tax which was imposed on imported merchandise under Federal law because of its importation, and the refund of internal revenue taxes paid on domestic alcohol as prescribed in 19 U.S.C. 1313(d).

---

[5]  According to 19 U.S.C. § 1555(b)(1), "[d]uty-free sales enterprises may sell and deliver for export from the customs territory duty-free merchandise in accordance with this subsection and such regulations as the Secretary may prescribe to carry out this subsection" from a bonded facility.

19 C.F.R. § 191.2(i) (2015); *see also id.* § 191.3. The new regulation, as part of the Rule, reads:

> Drawback, as authorized for payment by CBP, means the refund, in whole or in part, of the duties, taxes, and/or fees paid on imported merchandise, which were imposed under Federal law upon entry or importation, and the refund of internal revenue taxes paid on domestic alcohol as prescribed in 19 U.S.C. 1313(d). *More broadly, drawback also includes the refund or remission of other excise taxes pursuant to other provisions of law.*

19 C.F.R. § 190.2 (emphasis added). The final sentence of the new regulation within the Rule expands the definition of drawback to encompass the "refund or remission" of excise taxes on exports.

In support of its broadened definition of drawback, the Government asserts that § 1313(v)'s reference to any "claim for drawback" includes the cancellation of any excise-tax liability that has been paid or determined on exports. 19 U.S.C. § 1313(v). The Government relies on the language in 19 U.S.C. § 1313(d), which states that "a drawback [is] equal in amount to the tax found to have been paid *or determined* on such bottled distilled spirits and wines." 19 U.S.C. § 1313(d) (emphasis added). The Government adds that the IRC uses the term "drawback" similarly. *See* 26 U.S.C. § 5062(b) ("there shall be allowed . . . a drawback equal in amount to the tax found to have been paid *or determined* . . . ." (emphasis added)). NAM does not contest this point as to taxes that are paid. *See* Appellant's Br. 15. However, the Government goes further and argues that "drawback" encompasses the cancellation of excise taxes imposed on domestic products that are exported *without* the payment of tax.

Herein lies the crux of the dispute. The Government contends that the term "drawback" should also be used to describe transactions in which excise-tax liability is

extinguished under provisions where products are withdrawn for export without payment of tax. *See* 26 U.S.C. § 5362(c) (stating that wine exported without tax having been "paid or determined" does so without payment of tax); J.A. 12–13; Appellant's Br. 19. The Government's rationale is that, when products are withdrawn "without payment of tax" for export, they are not withdrawn "free of tax" because tax liability attaches at the time of production and is covered by bond and cancelled only upon proof of exportation. Appellant's Br. 28; *compare* 26 U.S.C. § 5362(c)(1) ("without payment of tax for export") *with* § 5362(c)(7)–(9) ("free of tax" for various uses including experimental and research purposes). We disagree.

The Rule's broadened definition of "drawback" includes a drawback of excise tax that was *never* "paid or determined" on exported merchandise. *See* 26 U.S.C. §§ 5704(b), 5214(a), 5362(c). This defies logic. A tax that has never been paid or determined cannot be said to have been "drawn back," and goods that have been exported without payment of tax cannot give rise to a "claim" for drawback, because there would be no refund to be paid out or cancellation of liability to be made.

The Government's argument that taxes on bonded wine products have been "determined" at the point of production and "cancelled" upon exportation cannot be reconciled with 26 U.S.C. § 5362(c). "Determined" within the IRC refers to situations where tax is both determined and paid at the time the goods are withdrawn from bond, or where "the amount of the tax to be paid is computed and fixed" upon withdrawal, "with payment to be made by return" later for either prepayment or deferred payment. S. Rep. No. 85-2090, at 100 (1958), reprinted in 1958 U.S.C.C.A.N. 4395, 4492; *see also* Appellee's Br. 52. If bonded goods are withdrawn for export, however, tax liability is not computed and fixed for prepayment or deferred payment because a tax will never be paid at all. *See, e.g.*, 26 U.S.C. § 5041(a) (stating that wine tax is

"determined as of removal for *consumption or sale*" (emphasis added)). Thus, tax in that scenario would not be "determined." The Government's assertion that the tax is determined at the time of production is unpersuasive and does not explain the statutory distinction appearing in other IRC provisions between a tax that has been "paid or determined" and one that "has not been paid or determined." *Compare* 26 U.S.C. § 5062(b) *with* 26 U.S.C. § 5214(a)(4). Moreover, had Congress intended "drawback" to describe all the instances in § 1313 and the IRC to which the agencies attempt to apply the term, it would not have selectively used the term in some sections, but not others. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("It is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" of language.); *see also BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1539, 209 L. Ed. 2d 631 (2021) ("In the end, all of the parties' fencing about language Congress didn't use persuades us of only one thing—that we are best served by focusing on the language it did employ."). Notably, both § 1313 and the IRC *do not* use the term "drawback" to refer to exportation without payment or determination of tax. Therefore, we conclude that the expansive definition in the Rule, which extends drawback to situations in which tax is never paid or determined, conflicts with the unambiguous text of the statute.

## II

The Government also argues on appeal that the CIT erred in invalidating the Rule by erroneously reading the Rule to create irreconcilable statutory conflicts and irrational results. Appellant's Br. 38 (citing J.A. 13).

With respect to statutory conflicts, the Government argues that Congress's addition of the "notwithstanding" clause in § 1313(j)(2), which requires a drawback of "any" tax imposed on importation "notwithstanding another provision of law," is not indicative of Congress's intent to allow

for a substitution drawback even if excise tax has not been paid on the export because the Supreme Court has explained that a "notwithstanding" clause should not be "unreasonably expanded" to "narrow so dramatically an important provision that [Congress] inserted in the same statute." Appellant's Br. 39 (quoting *Ministry of Def.& Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 386 (2009)). Next, the Government argues that the CIT erred in finding that the calculation methodology set forth in § 1313(*l*) is nullified by the Rule. With respect to the CIT's finding that the Rule produces irrational results by preventing "an untaxed export from serving as substituted merchandise in a drawback claim on a corresponding import in any capacity," the Government argues that the Rule does not prohibit this result but merely prohibits double recovery of the same tax. Appellant's Br. 44 (citing J.A. 17). Additionally, the Government argues that the legislative history of the drawback regime does not support invalidating the Rule. We disagree and address each of the Government's arguments below.

In 2004, Congress amended 19 U.S.C. § 1313(j)(2) to require drawback of "any" tax imposed on importation, "notwithstanding any other provision of law." 19 U.S.C. § 1313(j)(2). Section 1313(j)(2) provides the criteria for substitution drawback, which, as the CIT points out, does not include a requirement that a company must have already paid tax on its exports to receive a drawback. *See* J.A. 14–15. When the criteria are met, the CBP must pay a substitution drawback "notwithstanding any other provision of law." 19 U.S.C. § 1313(j)(2). Congress added this "notwithstanding" clause in 2004 specifically to overrule a series of Customs rulings holding excise taxes ineligible for substitution drawback and to make excise taxes eligible for substitution drawback, like other federal charges imposed "upon entry or [importation]." Pub. L. No. 108-429, § 1557(a), 118 Stat. 2434 at 2579 (Dec. 3, 2004); *NLRB v.*

*SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) (explaining that a "notwithstanding" clause can be used to "show[] which of two or more provisions prevails in the event of a conflict"). By relying on an "other provision of law"—specifically, subsection (v)—the Rule would trump paragraph (j)(2) and render the "notwithstanding" clause meaningless. *See* J.A. 14. Accordingly, the interpretation of § 1313(v) as set forth in the Rule creates a conflict with the amended language of §1313(j)(2) and thus cannot support the Government's interpretation.

Next, with respect to the Government's argument that the CIT erred in finding that the calculation methodology set forth in § 1313(*l*) is nullified by the Rule, § 1313(*l*)(2)(B)–(C) provides that the amount of drawback available based on substituted merchandise shall be "equal to 99 percent of the lesser of (i) the amount of duties, taxes, and fees paid with respect to the imported merchandise; or (ii) the amount of duties, taxes, and fees that would apply to the [substituted] exported article if the exported article were imported." 19 U.S.C § 1313(*l*)(2)(B)–(C). Essentially, § 1313(*l*)(2) provides the amount of drawback that the CBP must pay if the substitution statute, § 1313(j)(2), is satisfied. As the CIT properly stated, § 1313(*l*)(2) requires that a refund be paid on imported goods upon the timely exportation of other goods with the same USHTS code regardless of whether taxes were paid on those other goods. *See* J.A. 3. This is another example of how the Rule's interpretation of § 1313(v) creates a conflict with § 1313(*l*) and cannot support the Government's interpretation.

Third, we address the Government's contention that the CIT erred when it recognized that the Rule would create an irrational or absurd result by "prevent[ing] an untaxed export from serving as substituted merchandise in a drawback claim on a corresponding import in any capacity" or, in other words, would bar recovery of any duties, taxes and fees on the import, including the excise tax. J.A. 17. In response, the Government simply contends that the

Rule does not prohibit this result but merely prohibits double recovery of the same tax. Appellant's Br. 44. However, once exported merchandise has been used "to satisfy [one] claim for drawback," § 1313(v), it cannot be used for that purpose again under the Rule. Thus, every untaxed exportation of domestic goods creates a "claim for drawback" that triggers this restriction under the Rule. Consequently, such goods can never "be the basis of any other claim for drawback." 19 U.S.C. § 1313(v); *see also Ark. Dairy Coop. Ass'n v. U.S. Dep't of Agric.*, 573 F.3d 815, 829 (D.C. Cir. 2009) (finding that an interpretation producing "absurd" results "fails at *Chevron* step one"). Thus, under the Government's interpretation, the Rule reads into § 1313(v) a restriction that does not exist. The CIT was correct in its finding that this produces an absurd result that fails at *Chevron* step one.

As to the Government's final argument, that the legislative history does not support invalidating the Rule, the Government argues that Congress was clear in guarding against abuse of the substitution-drawback privilege by prohibiting an importer or exporter from counting a drawback twice. The Government concedes that if the CIT's analysis were credited, it suggests, at most, that Congress was aware of, but failed to correct, this issue as to wine. Appellant's Br. 49. The Government further contends that the agencies' estimated revenue loss supports its position more so than the CIT's review of congressional inaction through the legislative history. We disagree.

Here, the legislative history of the drawback regime demonstrates that Congress chose to expand access to drawbacks at the expense of excise taxes. For example, after § 1313(v) was added in 1993, in 2004, Congress amended 19 U.S.C. § 1313(j)(2) to require that drawbacks be paid "notwithstanding any other provision of law," as discussed above. Then, in 2008, Congress liberalized substitution drawback for wine by allowing substitution based on any wine that is the same color and within 50 percent of

the same price. *See* Pub. L. No. 110-234 § 15421, 122 Stat. at 1547 (codified as amended at 19 U.S.C. § 1313(j)(2)(2008)). Thereafter, the Treasury and the CBP proposed a regulation to limit drawback granted on exports to only the amount of taxes actually paid. Drawback of Internal Revenue Excise Tax, 74 Fed. Reg. 52,928, 52,931 (Oct. 15, 2009); J.A. 267. In response to opposition from legislators, the agencies eventually withdrew the proposed regulation. *See* Drawback of Internal Revenue Excise Tax, 75 Fed. Reg. 9,359–60 (Mar. 2, 2010); J.A. 273–74. No further action was taken by Congress.

As the CIT noted, "Congress is presumed to know that the wine industry was filing substitution-drawback claims in situations where no excise tax had been paid and . . . appears to have at least indirectly sanctioned the practice." J.A. 20. "This history demonstrates that Congress made a policy choice to encourage exports by expanding the ability to claim drawback, even with the knowledge that industries may then avoid some payment of excise tax." *Id.* We agree.

## Conclusion

We conclude that the challenged provisions of the Rule contravene the unambiguous text of the statute and, therefore, the inquiry ends at *Chevron* step one. Accordingly, we affirm the judgment of the CIT that the Rule is unlawful as to the challenged provisions. We have considered the parties' remaining arguments and determine that we need not address them in light of our decision.

**AFFIRMED**